UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EMILE TOPILIN,

                           Plaintiff,

        v.

TATA AMERICA INTERNATIONAL
CORPORATION and VINOD VERGHESE, Jointly
and severally,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No.: _____

COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF CASE

1.     Plaintiff Emile Topilin alleges claims of sexual harassment, sexual orientation-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964, § 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against his former employers, Tata American International Corporation and Vinod Verghese.

## THE PARTIES

2.     Topilin was, at all relevant times, an adult individual, residing in New York, New York, New York County. Topilin is an openly gay man.

3.     Upon information and belief, Tata is a corporation that is organized and exists under New York law with its principal office at 101 Park Avenue, Floor 26, New York, New York 10178 (Phone 212.557.8038). Tata is a wholly-owned subsidiary of Tata Consultancy Services. Tata employs more than 50 employees in New York City.

4.     Vinod Verghese was, at all relevant times, an adult individual who, upon information and belief, resides in New York, New York, New York County.

JURISDICTION & VENUE

5.     This Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Topilin's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims occurred in this District.

7.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

8.     On or about May 29, 2018, Topilin filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging claims of sexual harassment, sexual orientation-based discrimination and retaliation under Title VII, the NYSHRL and the NYCHRL.

9.     On August 21, 2019, the EEOC issued Topilin a Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A.

10.    Topilin commenced this action within 90 days of receiving the Notice of Right to Sue.

STATEMENT OF FACTS

11.    Tata Consultancy Services is an India-based multinational information technology service, consulting and business solutions company with headquarters in Mumbai, Maharashtra. Tata is a subsidiary of Tata Consultancy Services.

Role and Performance Evaluations[1]

12.     Topilin commenced employment with Tata on or about October 13, 2014 as Associate Corporate Counsel in the General Counsel's office.

13.     As Associate Corporate Counsel, he reported to Associate General Counsel (Verghese) who, in-turn, reported to both Deputy General Counsel (Madhav Anchan) and Global Head of Legal and Corporate Affairs (Vish Iyer), who, in-turn, reported to the CEO (Rajesh Gopinathan).

14.     Tata employed, for all relevant times, Verghese as Associate General Counsel.

15.     Verghese is in a supervisory role relative to Topilin, having the authority to discipline him, review his performance, and affect his compensation and promotional opportunities.

16.     Tata evaluates its employees on a curve. For the Counsel's office, where Topilin worked, this translated to: only 10% of the group or 1 person gets an A, 25% or 3 get a B, and the majority or 65% get a C.

17.     For his 2015 and 2016 semi-annual reviews, Topilin received a "C."

18.     On April 1, 2017, he received his annual review rating: a "D."

19.     It is company policy that an employee is placed on a Performance Improvement Plan when he or she receives a D annual review and is terminated if he or she receives a second D upon completing the Performance Improvement Plan.

---

[1] These subject lines are included for organizational purposes.

<u>Sexual Harassment, Discrimination and Retaliation</u>

20.     During his employment, Topilin did not receive anti-harassment or anti-discrimination training.

21.     On or about the first day of Topilin's employment at Tata, Verghese informed Topilin that he is gay and asked Topilin if he is gay, to which he responded that he is. After Topilin informed Verghese that he is gay, Verghese slid his knee between Topilin's legs and touched Topilin's penis. To which, Topilin recoiled and unambiguously communicated he wanted to keep this a professional relationship.

22.     The following occurred about six times: Verghese would tell Topilin to come to his office; Topilin would go to his office and Verghese would tell Topilin to look at something on his computer; when Topilin would come around the desk to look at the computer, Verghese would put his hand on Topilin's buttocks, fondling them, and Topilin would push his hand away.

23.     Verghese regularly told Topilin that he "looks sexy," to which Topilin would respond, in sum and substance, "Thanks for the compliment, but I wish you had kept it to yourself as it is inappropriate and embarrasing to me."

24.     In or about February 2015, Verghese called Topilin at home while he was recovering from sinus surgery. Verghese inquired, "If there is someone to keep your bed warm" and went on to state "it is too bad that person is not me." Topilin thanked him for checking on him but stated he preferred Verghese had not made that last remark.

25.     Topilin, in August 2015, was subjected to a particularly egregious sexual harassment incident: both Verghese and Topilin entered the men's room within a few moments of each other; Topilin entered a stall when he noticed Verghese was using one

of the two available urinals; Verghese, before Topilin could close the stall door, turned around from the urinal with his penis visible and asked Topilin for a "quickie;" Topilin, hoping to escape this situation, tried to close the stall door but Verghese pushed it open; Topilin then pushed past him and escaped this traumatizing situation and told Verghese what he did was bordering on assault and rape. Topilin was, in fact, so shaken by this that he left the building for a few hours and returned only to collect his things and leave for the day. Seeing this happen, Verghese approached him and told him to keep that incident between them, while giving Topilin a menacing look. Fearing retaliation, Topilin did not tell anyone about this incident.

26.    In February 2016, the entire legal department had a conference in the Republic of India.

27.    During one of the nights of that February 2016 conference, Verghese forcibly kissed Topilin on the beach adjacent to the resort hotel by pulling Topilin's head to him, while also forcibly putting his hand down Topilin's pants and fondled his penis. Topilin made clear this conduct was unsolicited, unwanted and unacceptable, and that Verghese had to immediately stop these unwanted sexual advances because they were making his life inside and outside the office miserable.

28.    Following this incident, Topilin told Verghese that he would report him to the Deputy General Counsel and the Global Head of Legal and Corporate Affairs if this conduct did not stop.

29.    The conduct did not, however, stop. Verghese continued to make unsolicited sexual advances towards Topilin.

30.     In May 2016, Topilin and Verghese were at a group lunch at the restaurant Sinigual, at which Vish Iyer (Global Head of Legal and Corporate Affairs) attended. Having arrived late, the only available seat for Topilin was next to Verghese. After the food was served, Verghese slid his hand under the table, placing it on Topilin's knee and then quickly moved his hand up to Topilin's crotch. Surrounded by his colleagues including Mr. Iyer, Topilin was petrified with fear when this happened. Topilin, while not saying anything, kicked Verghese's foot, signaling to him to stop. Verghese did move his hand off of Topilin's crotch and Topilin promptly excused himself, and went to the men's room to compose himself. When they were back in the office, Topilin told Verghese – once again – to stop these harassing acts and reminded him of the promise Verghese made in February after the incident at the legal conference in India that the harassment would stop. Verghese apologized and pleaded with Topilin to keep this quiet.

31.     In June 2017, Verghese and Topilin met with the Deputy General Counsel. Topilin did not complain about Verghese's sexual harassment because he believes Verghese generates significant revenue for the company and feared his complaint would be ignored or, worse, he would be retaliated against.

32.     Following that June 2017 meeting, Verghese thanked Topilin for not saying anything to the Deputy General Counsel about the sexual harassment while grabbing Topilin by the neck with menacing grip and fondling, in a sexual way, his right ear.

33.     In July 2017, Topilin was informed that he was being investigated because a customer had allegedly complained that he deleted a "Compliance with Laws"

paragraph from a couple of Statements of Works and initialed and dated the deletion without letting the customer know that it had to counter-initial and date the same.

34.     Other attorneys in the Counsel's Office had routinely done the same thing that Topilin was accused of but they were not investigated. Importantly, none of those attorneys were the target of Verghese's unwanted sexual advances – let alone rejected his advances.

35.     Topilin was being treated differently than his co-workers because he rejected Verghese's repeated sexual advances and because of his sexual orientation

36.     On July 21, 2017, Topilin complained to Sujata Majumdar from Human Resources about Verghese's sexual harassment.

37.     The next time Topilin heard from Sujata was on August 2, 2017 when she informed him that his employment was being terminated "because of an investigation."

38.     Defendants fired Topilin despite company policy that an employee is fired only after receiving a second D semi-annual performance review after having first been put on a performance improvement plan; Topilin was not put on a performance improvement plan and received only one D.

39.     A few days prior to his termination, Hilary Robinson (Tata's Employment Counsel), commented to Topilin that Verghese mistreated him verbally and in writing because Topilin is gay and Verghese is insecure with his homosexuality in Tata's very conservative working environment, which prompted Verghese to single out Topilin for a disparate and especially harsh treatment in written and verbal communications to dispel any appearance of favoritism or "gay solidarity" in the eyes of Verghese's management.

40.     Verghese discriminated against Topilin because of his sexual orientation in numerous ways, including: subjecting him to higher performance standards; giving him the D review, despite the numerous thank you letters Topilin received from his internal customers for whom he negotiated their commercial contracts and they sent positive feedback to Verghese; firing Topilin before he received a second D and before he was put on a PIP; and firing Topilin for alleged conduct that numerous non-gay employees have done but for which they were not fired.

41.     Defendants used Topilin's purported poor performance as a pretext to terminate his employment in retaliation for complaining about Verghese sexually harassing him and for rejecting Verghese's sexual advances.

42.     The continued sexual harassment has caused Topilin to have anxiety, sleepless nights, panic attacks, suffer from stress and headaches, to seek treatment from a mental health provider and to take prescribed medication.

43.     Topilin's harassment reflects and is consistent with the overall unlawful nature of Tata's unlawful work environment: Cyrus Mistry (Chairman of Tata Sons) was dismissed following sexual harassment claims; and the federal class action lawsuit against Tata for discriminating against individuals who are not South Asian.

44.     Tata did not exercise reasonable care to prevent or promptly correct the harassing behavior set forth in this Complaint.

FIRST CAUSE OF ACTION
SEXUAL HARASSMENT UNDER TITLE VII

45.     Topilin repeats every preceding allegation as if fully set forth herein.

46.     At all relevant times, Topilin was an "employee" and "person" within the meaning of Title VII and Defendants were "employers."

47.     Title VII prohibits the creation of a hostile work environment, including male-on-male sexual harassment. 42 U.S.C. §§ 2003-2(a)(1), *et seq.*

48.     As Verghese was Topilin's immediate supervisor, Tata is vicariously liable for the hostile work environment he created and Tata is unable to support an affirmative defense to this.

49.     The facts asserted in this Complaint confirm Topilin's work environment was objectively severe and pervasive such that a reasonable person would find it hostile; Topilin perceived the environment as hostile; and the hostile environment was because of his gender.

50.     Defendants engaged in unlawful employment practices that Title VII prohibits.

51.     As a result of Defendants' unlawful conduct, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, medical expenses, punitive damages, and attorneys' fees.

<u>SECOND CAUSE OF ACTION</u>
SEXUAL HARASSMENT UNDER THE NYSHRL

52.     Topilin repeats every preceding allegation as if fully set forth herein.

53.     At all relevant times, Topilin was an "employee" and "person" within the meaning of the NYSHRL and Defendants were "employers."

54.     The NYSHRL prohibits employment discrimination and harassment based on gender. N.Y. Exec. Law § 296(1)(a).

55.     Topilin was subjected to unwelcomed sexual conduct in the workplace that constitutes sex-based harassment.

56.     Tata is vicariously liable for an actionable hostile environment created by one of its supervisors who had immediate or successively higher authority over Topilin.

57.     Verghese had the authority to affect Topilin's employment terms and conditions.

58.     Verghese is personally liable for the damages under this claim because he constitutes an employer and participated in the conduct giving rise to this claim. N.Y. Exec. Law §§ 296(1), 296(6).

59.     As a result of Defendants' harassment of him, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

THIRD CAUSE OF ACTION
GENDER BASED HARASSMENT UNDER THE NYCHRL

60.     Topilin repeats every preceding allegation as if fully set forth herein.

61.     At all relevant times, Topilin was an "employee" and "person" within the meaning of the NYCHRL and Defendants were "employers."

62.     Topilin was treated less well than his female colleagues because of his gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

63.     Tata is strictly liable for the actionable hostile environment created by one of its supervisors who had immediate or successively higher authority over Topilin.

64.     As a result of Defendants' harassment of him, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, and medical expenses.

65.     Defendants harassed Topilin with malice and/or reckless indifference to his rights under the NYCHRL.

FOURTH CAUSE OF ACTION
SEXUAL ORIENTATION-BASED DISCRIMINATION UNDER TITLE VII

66.     Topilin repeats every preceding allegation as if fully set forth herein.

67.     Title VII prohibits discrimination on the basis of sexual orientation. 42 U.S.C. §§ 2000e-2(a)(1), *et seq*.

68.     Defendants discriminated against Topilin on the basis of his sexual orientation. Verghese purposely subjected Topilin to higher performance standards than his non-gay co-workers because Verghese wanted to avoid any appearance of favoring Topilin for being gay. This discriminatory treatment includes giving Topilin a negative performance review and firing Topilin, without first putting him on a PIP, for alleged conduct that many non-gay workers have done, but for which they were not fired.

69.     If Topilin was not gay, he would not have received that negative review and would not have been fired.

70.     No legitimate, non-discriminatory reason exists for firing Topilin.

71.     As Verghese was Topilin's immediate supervisor, Tata is vicariously liable for the hostile work environment he created and Tata is unable to support an affirmative defense to this.

72.     Defendants engaged in unlawful employment practices that 42 U.S.C. §§ 2000e, *et seq*. prohibits by discriminating against Topilin on the basis of his sexual orientation.

73.     As a result of Defendants' unlawful conduct, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish,

emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, medical expenses, punitive damages, and attorneys' fees.

FIFTH CAUSE OF ACTION
SEXUAL ORIENTATION-BASED DISCRIMINATION UNDER THE NYSHRL

74.    Topilin repeats every preceding allegation as if fully set forth herein.

75.    The NYSHRL prohibits employment discrimination based, *inter alia*, on sexual orientation. N.Y. Exec. Law § 296(1)(a).

76.    Defendants discriminated against Topilin on the basis of his sexual orientation. Verghese purposely subjected him to higher performance standards than his non-gay co-workers in order to avoid any appearance of favoring him for being gay. This discriminatory treatment includes giving Topilin a negative performance review and firing Topilin, without first putting him on a PIP, for alleged conduct that many non-gay workers have done, but for which they were not fired.

77.    If Topilin was not gay, he would not have received that negative review and would not have been fired.

78.    No legitimate, non-discriminatory reason exists for firing Topilin.

79.    As Verghese was Topilin's immediate supervisor, Tata is vicariously liable for the hostile work environment he created and Tata is unable to support an affirmative defense to this.

80.    Verghese had the authority to affect Topilin's employment terms and conditions.

81.    Verghese is personally liable for the damages under this claim because he constitutes an employer and participated in the conduct giving rise to this claim. N.Y. Exec. Law §§ 296(1), 296(6).

82.     As a result of Defendants' unlawful conduct, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, medical expenses and attorneys' fees.

<u>SIXTH CAUSE OF ACTION</u>
SEXUAL ORIENTATION-BASED DISCRIMINATION UNDER THE NYCHRL

83.     Topilin repeats every preceding allegation as if fully set forth herein.

84.     The NYCHRL prohibits discrimination on the basis of sexual orientation.

85.     Topilin was treated less well than his non-gay colleagues. Verghese purposely subjected Topilin to higher performance standards than his non-gay co-workers in order to avoid any appearance of favoring Topilin for being gay. This discriminatory treatment includes giving Topilin a negative performance review and firing Topilin, without first putting him on a PIP, for alleged conduct that many non-gay workers have done, but for which they were not fired.

86.     If Topilin was not gay, he would not have received that negative review and would not have been fired.

87.     No legitimate, non-discriminatory reason exists for firing Topilin.

88.     Tata is strictly liable for the actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Topilin.

89.     As a result of Defendants' harassment of him, Topilin has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

90.     Defendants discriminated against Topilin with malice and/or reckless indifference to his rights under the NYCHRL.

SEVENTH CAUSE OF ACTION
RETALIATION UNDER TITLE VII

91.     Topilin repeats every preceding allegation as if fully set forth herein.

92.     Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §§ 2000e-3(a).

93.     Topilin engaged in protected activity: rejecting Verghese's sexual advances, complaining to Human Resources about his sexual harassment, and complaining to Tata's in-house employment counsel about his harassment.

94.     Tata was aware of Topilin's participation in the protected activity; Tata took adverse action against Topilin; and a causal connection existed between Topilin's protected activity and the adverse action Tata took.

95.     No legitimate, non-retaliatory reasons exist for the adverse action Tata took against Topilin.

EIGHTH CAUSE OF ACTION
RETALIATION UNDER THE NYSHRL

96.     Topilin repeats every preceding allegation as if fully set forth herein.

97.     Under the NYSHRL, "[i]t shall be unlawful discriminatory practice . . . [f]or any employer . . . to . . . discriminate against any person because [s]he has opposed any practices forbidden under this article or because [s]he has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e).

98.     Topilin engaged in protected activity, having opposed practices the NYSHRL forbids; Tata was aware of Topilin's participation in the protected activity; Tata took adverse action against Topilin; and a causal connection existed between Topilin's protected activity and the adverse action Tata took.

99.     Tata was aware of Topilin's participation in the protected activity; Tata took adverse action against Topilin; and a causal connection existed between Topilin's protected activity and the adverse action Tata took.

100.    No legitimate, non-retaliatory reasons exist for the adverse action Tata took against Topilin.

<u>NINTH CAUSE OF ACTION</u>
RETALIATION UNDER THE NYCHRL

101.    Topilin repeats every preceding allegation as if fully set forth herein.

102.    The NYCHRL prohibits employers from retaliating or discriminating in any manner against any person because such person has opposed any practice the NYCHRL forbids. N.Y.C. Admin. Code § 8-107(7).

103.    Under the NYCHRL, the retaliation or discrimination complained of need not result in an "ultimate action" with respect to the employee, or even in a materially adverse change in the employee's terms and conditions, provided that the retaliatory or discriminatory act(s) complained of would be reasonably likely to deter a person from engaging in protected activity. Restoration Act § 3 (amending N.Y.C. Admin Code § 8-107(7)).

104.    Topilin took action to oppose Tata's hostile work environment.

105.    Tata engaged in conduct that was reasonably likely to deter a person from engaging in such conduct, violating the NYCHRL's anti-retaliation provisions. N.Y.C. Admin Code § 8-107(7)

106.    A causal connection exists between Topilin's opposition and Defendants' decision to terminate his employment.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Topilin respectfully requests the following relief:

a.      Holding Defendants jointly and severally liable;

b.      Back pay, front pay, and all benefits along with pre and post judgment interest;

c.      Punitive damages under Title VII, NYSHRL and NYCHRL;

d.      Damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, and medical expenses in order to compensate him for the injuries he has suffered and to signal to other employers that discrimination, harassment and retaliation are repulsive to legislative enactments;

e.      Attorneys' fees, costs and expenses to the fullest extent permitted by law; and

f.      Any other relief that this Court deems just and equitable.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Topilin demands a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York
        November 22, 2019

LIPSKY LOWE LLP


  s/ Douglas B. Lipsky
Douglas B. Lipsky
Christopher H. Lowe
Sara J. Isaacson
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
Tel: 212.392.4772
Fax: 212.444.1030
doug@lipskylowe.com
chris@lipskylowe.com
*Attorneys for Emile Topilin*

EXHIBIT A

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Emile Topilin<br>c/o Lipsky Lowe LLP<br>630 Third Avenue - 5th Floor<br>New York, NY 10017 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |  |  |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative<br><br>**Holly M. Shabazz,** | | Telephone No. |
| **520-2018-04092** | **State & Local Program Manager** | | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

- [ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [X] Other *(briefly state)*          **Charging Party wishes to pursue matter in Federal District Court**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____     August 21, 2019

**Kevin J. Berry,**                           *(Date Mailed)*
**District Director**

Enclosures(s)

cc:

| **DOUGLAS B. LIPSKY - ESQ**<br>**Attorney at Law**<br>**630 Third Avenue**<br>**5th Floor**<br>**New York, NY 10017** | **TATA AMERICA INTERNATIONAL CORPORATION**<br>**Attn: Director of Human Resources**<br>**101 Park Avenue**<br>**26th Floor**<br>**New York, NY 10178** |
|---|---|